United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL SALAS,<br>   Plaintiff,<br>v.<br>MICHAEL GOMEZ, et al.,<br>   Defendants. | Case No. 14-cv-01676-JST (PR)<br><br>**ORDER OF SERVICE** |

**INTRODUCTION**

On April 11, 2014, plaintiff, a California prisoner incarcerated at Pelican Bay State Prison (PBSP) and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983. By separate order filed concurrently herewith, plaintiff has been granted leave to proceed in forma pauperis. His complaint is now before the court for review under 28 U.S.C. § 1915A.

**BACKGROUND**

Plaintiff claims that PBSP officials and staff have impeded his efforts to practice his Jewish religion. His complaint alleges the following:

In 2010, plaintiff began studying and practicing Judaism. On May 30, 2012, PBSP's Jewish Chaplain, Rabbi Joseph Hample, conducted a Bar Mitzvah ceremony for plaintiff. On June 5, 2012, Rabbi Hample resigned as Chaplain and defendant Community Resource Manager Robert

Losacco inherited the Rabbi's responsibilities in overseeing PBSP's Jewish program. Based on Rabbi Hample's recommendation, plaintiff was made inmate Jewish minister for the Jewish community in the PBSP B-yard.

On September 25, 2012, PBSP authorized plaintiff to receive a Jewish Kosher diet. On October 1, 2012, PBSP modified its Kosher meal plan, reducing portion sizes by half. In addition, PBSP's "new" Kosher meals regularly contained contaminated, rotten, and nutritionally inadequate food. For example, plaintiff began regularly receiving expired milk, rotten fruit, and spoiled cream cheese. He also regularly received food trays with the factory-secured covering partially removed and food missing. In a span of six days in early-November 2013, he received four rotten bologna sandwiches and fermented fruit cups. Plaintiff filed an inmate appeal on November 11, 2013 asking kitchen staff to throw out the rotten food, but nevertheless received rotten bologna sandwiches again on November 29, November 30, and December 4, 2013.

The contaminated food has made plaintiff very sick on multiple occasions, including regular bouts of stomach pain, vomiting, nausea, and diarrhea. Plaintiff remained sick for five days after discovering a roach in his fruit cup in December 2012. On another occasion, plaintiff became sick with coughing, sneezing, headaches, and body aches, subsequent to eating a meal that had been tampered with after the factory covering had been removed. The small amount of food that plaintiff has been able to eat has been nutritionally inadequate. Plaintiff has lost 33 pounds since starting on PBSP's new Kosher meal plan.

Although plaintiff regularly reported problems with his meals to a floor officer, he rarely received new food to replace the inedible food. In addition, most of plaintiff's inmate appeals have been denied or ignored by staff and officials at PBSP. Although some of plaintiff's appeals were nominally granted, he continued to receive inedible and nutritionally inadequate food.

In addition to being inedible, plaintiff's food has not met Jewish dietary (Kosher) guidelines. For example, plaintiff regularly receives non-Kosher food items. Plaintiff's meals often contain dairy products served with meat, which is against Jewish dietary law. Further, the unsanitary preparation of the food renders plaintiff's meals unclean, which means they are no longer considered Kosher.

1  Finally, PBSP staff has denied plaintiff access to Jewish scriptures.  Plaintiff has requested
2  Jewish scriptures based on his role as Jewish minister for the B-yard.  His requests have been
3  denied.  According to plaintiff, Jews have been required to study scripture as an alternative to
4  Temple practices and ceremonies.  Without the Torah and other Jewish scriptures, plaintiff is
5  unable to practice his faith.

## DISCUSSION

A. <u>Standard of Review</u>

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  <u>See</u> 28 U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915A(b)(1), (2).  Pro se pleadings must, however, be liberally construed.  <u>See</u> <u>Balistreri v. Pacifica Police Dep't.</u>, 901 F.2d 696, 699 (9th Cir. 1988).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' "  <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007) (citations omitted).  Although in order to state a claim a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .  Factual allegations must be enough to raise a right to relief above the speculative level."  <u>Bell Atlantic Corp. v. Twombly,</u> 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).  A complaint must proffer "enough facts to state a claim for relief that is plausible on its face."  <u>Id.</u> at 1974.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

3

B.  <u>Legal Claims</u>

The First Amendment guarantees the right to the free exercise of religion. In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. See <u>Shakur v. Schriro</u>, 514 F.3d 878, 883-84 (9th Cir. 2008). Inmates' religious freedoms also are protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. Section 3 of RLUIPA provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and local jails], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). For an RLUIPA claim, the plaintiff-inmate must show that the government has imposed a substantial burden on his religious exercise. A "'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." <u>San Jose Christian College v. Morgan Hill</u>, 360 F.3d 1024, 1034 (9th Cir. 2004).

Giving it the liberal construction to which it is entitled, the pro se complaint states cognizable claims for a violation of plaintiff's First Amendment right to the free exercise of religion and for a violation of plaintiff's rights under RLUIPA. The complaint adequately links defendants Gomez, Halls, Plunkett, Reidel, Ireland, Young, Cooper, Lemos, Sojka, Rias, Lossaco, and Lewis to the claims based on their roles in denying his requests for a religious diet and other religious accommodations.

Plaintiff also urges that defendants violated his right to be free from cruel and unusual punishment by failing to provide him food that he could eat consistent with his religious beliefs. Giving the pro se complaint the liberal construction to which it is entitled, an Eighth Amendment claim is also stated against defendants Gomez, Halls, Plunkett, Reidel, Ireland, Young, Cooper, Lemos, Sojka, Rias, Losacco, and Lewis. See <u>Hebbe v. Pliler</u>, 627 F.3d 338, 343 (9th Cir. 2010) (quoting <u>Allen v. City and County of Honolulu</u>, 39 F.3d 936, 940 (9th Cir. 1994) ("'[A]n inmate

4

1  cannot be forced to sacrifice one constitutionally protected right solely because another is
2  respected.'")
3     The potential liability of the defendants who allegedly reviewed and rejected plaintiff's
4  inmate appeals is under the First Amendment, RLUIPA, and the Eighth Amendment, and is not
5  under the Fourteenth Amendment's Due Process Clause.  There is no constitutional right to a
6  prison or jail administrative appeal or grievance system in California, and therefore no due process
7  liability for failing to process or decide an inmate appeal properly.  See Ramirez v. Galaza, 334
8  F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  If a defendant
9  only denied an inmate appeal about a religious problem that already had occurred and was
10 complete (e.g., an exclusion of the inmate from a religious ceremony on a past date), there would
11 be no liability for a constitutional violation; however, where the problem is an ongoing religious
12 need and the request is made in an inmate appeal to remedy the ongoing problem, liability can be
13 based on the denial of an inmate appeal, just as it could be based on the denial of a verbal request
14 from the inmate.  Cf. Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006) (supervisor may be liable
15 for deliberate indifference to a serious medical need, for instance, if he or she fails to respond to a
16 prisoner's request for help).

## CONCLUSION

For the foregoing reasons and for good cause shown,

1. The complaint, liberally construed, states cognizable claims under § 1983 for violations of plaintiff's First Amendment religious freedom, RLUIPA, and Eighth Amendment rights.

2. The Clerk of the Court shall issue summons and the United States Marshal shall serve, without prepayment of fees, a copy of the complaint (Docket No. 1), and a copy of this order upon the following defendants at PBSP: Correctional Cook Supervisor Michael Gomez, Correctional Cook Supervisor P. Halls, Kitchen Staff D. Plunkett, Kitchen Staff K. Reidel, Kitchen Staff S. Ireland, Kitchen Staff R. Young, Kitchen Staff T. Cooper, Correctional Business Manager Tim Lemos, Assistant Correctional Food Manager Lucy Sojka, Correctional Food Manager Robert Rias, Community Resource Manager Robert Losacco, and Warden Glen D.

Lewis.

The Clerk shall also mail a courtesy copy of the complaint and this order to the California Attorney General's Office.

3.   In order to expedite the resolution of this case, the Court orders as follows:

a.   No later than **91 days** from the date this order is filed, defendants must file and serve a motion for summary judgment or other dispositive motion. A motion for summary judgment also must be accompanied by a Rand notice so that plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. Woods v. Carey, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).[1]

If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the Court prior to the date the motion is due.

b.   Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon defendants no later than **28 days** from the date the motion is filed. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

c.   Defendants **shall** file a reply brief no later than **14 days** after the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion.

4.   Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about

---

[1] If defendants assert that plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), defendants must raise such argument in a motion for summary judgment, pursuant to the Ninth Circuit's recent opinion in Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014) (en banc) (overruling Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, should be raised by a defendant as an unenumerated Rule 12(b) motion). Such a motion should also incorporate a modified Wyatt notice in light of Albino. See Wyatt v. Terhune, 315 F.3d 1108, 1120, n.14 (9th Cir. 2003); Stratton v. Buck, 697 F.3d 1004, 1008 (9th Cir. 2012).

any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial.  Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc) (App. A).

(The Rand notice above does not excuse defendants' obligation to serve said notice again concurrently with a motion for summary judgment.  Woods, 684 F.3d at 939).

5. All communications by plaintiff with the Court must be served on defendants' counsel by mailing a true copy of the document to defendants' counsel.  The Court may disregard any document which a party files but fails to send a copy of to his opponent.  Until defendants' counsel has been designated, plaintiff may mail a true copy of the document directly to defendants, but once defendants are represented by counsel, all documents must be mailed to counsel rather than directly to defendants.

6. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7. Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).  Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

8. Any motion for an extension of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

7

9. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

**IT IS SO ORDERED.**

Dated: July 9, 2014

_____
JON S. TIGAR
United States District Judge