UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL SALAS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL GOMEZ, et al.,<br><br>　　　　　Defendants. | Case No.  14-cv-01676-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 77 |

## INTRODUCTION

Plaintiff, a prisoner at Pelican Bay State Prison ("PBSP"), filed this pro se civil rights action under 42 U.S.C. § 1983 alleging that PBSP officials and staff have violated his First Amendment right to religious freedom, his Eighth Amendment right to be free from cruel and unusual punishment, and his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1.  Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.  Defendants have filed a motion to dismiss.  Docket No. 77.  For the reasons set forth below, the motion to dismiss is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

### I.    Amended Complaint

Plaintiff makes the following allegations in his Amended Complaint ("Am. Compl.").

On September 25, 2012, Community Resource Manager ("CRM") Losacco approved Plaintiff's request to receive a Jewish kosher diet.  Docket No. 66 ("Am. Compl.") at 10.  Plaintiff alleges that CRM Losacco has responsibility for overseeing and reviewing the Jewish kosher diet

United States District Court
Northern District of California

menu plan; is required to "provide results" to Correctional Food Manager Reyes;[1] and is in charge of purchasing the kosher food products.  Am. Compl. at 24.

On October 1, 2012, PBSP began distributing a generic brand of the kosher diet program, which was approved by Departmental Food Administrator Maurino.  Am. Compl. at 10 and 17.

**Allegations regarding contaminated food.**  Starting November 2012, Plaintiff began to occasionally receive kosher meals that contained spoiled food or roaches.  These contaminated meals caused Plaintiff to fall ill.  Am. Compl. at 10–11.

On January 13, 2013, Plaintiff submitted a prison grievance complaining about the contaminated food.  Am. Compl. at 11.  On February 4, 2013, Supervising Correctional Cook Gomez informed Plaintiff that he would grant the prison grievance, but asked Plaintiff to withdraw the grievance.  Am. Compl. at 11–12.  Plaintiff refused to withdraw his grievance.  This refusal angered Gomez who responded by refusing to answer Plaintiff's questions regarding the contaminated food.  Am. Compl. at 12.  On February 12, 2013, Assistant Correctional Business Manager Sojka and Correctional Business Manager Lemos interviewed Plaintiff as part of the first-level review of Plaintiff's grievance.  Am. Compl. at 12.  On July 3, 2013, Warden Lewis and Chief Deputy Warden Ducart reviewed Plaintiff's grievance regarding the contaminated food and refused to fully grant Plaintiff's request that food be served in a humane manner, stating that PBSP had no control over Plaintiff's food.  Am. Compl. at 13.

On July 4, 2013, Plaintiff received another contaminated kosher meal.  Am. Compl. at 14.  Plaintiff and his cellmate both fell ill after tasting the meal.  Am. Compl. at 4.  On July 7, 2013, Plaintiff notified Gomez and Supervising Correctional Cook Halls that the food had been contaminated.  Am. Compl. at 14.  Plaintiff submitted CDCR Form 22 Requests for Interviews ("Form 22") to both Gomez and Halls.  Am. Compl. at 14.  Gomez did not respond until three months later.  His response did not address the merits of the issue.  Instead, Gomez stated that the Form 22 was outdated and asked Plaintiff to resubmit it.  Am. Compl. at 14.

---

[1] The amended complaint variously refers to the Correctional Food Manager as Rias (Am. Compl. at 5), Rios (Am. Compl. at 24), and Reyes (Am. Compl. at 25).  The Court will refer to hin as Reyes, as Defendants have done.

United States District Court
Northern District of California

On November 5, 7, and 10, 2013, Plaintiff received bologna sandwiches that were spoiled. Am. Compl. at 15. On November 10, 2013, Plaintiff submitted a Form 22 to Gomez and Halls informing them that he had received spoiled bologna sandwiches, spoiled cream cheese, and fermented fruit cups in his meals. Am. Compl. at 15. On November 11, 2013, kitchen staff employee Cooper responded to the Form 22 and stated that the food service had discontinued issuing the spoiled bologna sandwich per Gomez's direction. Am. Compl. at 15. That same day, Plaintiff again received a spoiled bologna sandwich, so Plaintiff submitted another Form 22 to Gomez and Halls informing them of the spoiled meals and requesting that the spoiled food be thrown out. Am. Compl. at 15. Plaintiff never received a response to this Form 22 and this Form 22 was sent back to him the following day without a response. Am. Compl. at 16.

Plaintiff continued to receive spoiled food throughout November. On December 1, 2013, Plaintiff sent a Form 22 to Cooks Gomez and Hall, asking that PBSP stop distributing spoiled food and asking Gomez and Hall to inform their superiors that Plaintiff continued to receive spoiled food. Am. Compl. at 16. Kitchen staff employee Ireland responded and stated that the main kitchen was working to solve the kosher lunchmeat problem and that the kitchen always replaced any spoiled foods. Am. Compl. at 17.

On December 4, 2013, Plaintiff again received spoiled food, and he submitted a Form 22 to Sojka and Lemos informing them of the spoiled food. Am. Compl. at 16. Sojka and Lemos did not respond to this Form 22, but kitchen staff employee Reidel responded, stating that no other complaints had been received regarding the food and that Hall had personally inspected several cases of food and found no spoiled foods. Am. Compl. at 16.

Maurino ordered that the meals be double-wrapped but this solution did not address food that had been contaminated prior to the wrapping. Am. Compl. at 17.

**Allegations regarding nutritionally inadequate food.** Starting mid-November 2012, Plaintiff noticed that his meal portions had been reduced by half. Am. Compl. at 18. On December 2, 2012, Gomez provided Plaintiff with nutrient values for both the kosher diet in effect prior to October 1, 2012, and the current kosher diet. Am. Compl. at 19. On February 12, 2013, Sojka and Lemos implemented a procedure to address meals that were missing food items or

1   otherwise fell short of the nutritional requirements set forth in the graphs provided by Gomez.

2   Am. Compl. at 19.

3        On April 14, May 7, and May 14, 2013, Plaintiff received meals that fell short of the

4   nutritional requirements.  Am. Compl. at 20.  Plaintiff submitted Form 22s to Gomez and Hall

5   regarding the nutritionally inadequate meals, but received no response.  Am. Compl. at 20.  On

6   May 20, 2013, Plaintiff submitted a prison grievance complaining that he was not receiving his

7   full meal portion in violation of CDCR regulations.  Am. Compl. at 20.  On June 15, 2013, kitchen

8   staff employee Plunkett responded that meals were pre-packed and sealed, and that Plunkett would

9   supervise the portions and ensure that Plaintiff was receiving the correct amounts.  Am. Compl. at

10  20.

11       From July 19 to August 24, 2013, Plaintiff did not receive milk and fruit in his meals.  Am.

12  Compl. at 21.  Plaintiff submitted a Form 22 to the kitchen staff regarding his incomplete meals,

13  which was responded to on August 24 by kitchen staff employee Ireland.  Am. Compl. at 21.

14  Ireland responded that fruit and milk would be included with Plaintiff's breakfast and lunch trays.

15  Am. Compl. at 21.

16       On August 3, 2013, Plaintiff submitted a Form 22 to Sojka stating that it was inaccurate

17  that PBSP had no control over preparation and packaging of kosher meals.  Am. Compl. at 21.

18  Kitchen staff employee Young responded to this grievance but did not address the issue.  Am.

19  Compl. at 22.

20       On August 11, 2013, Plaintiff again submitted a Form 22 to Sojka stating that it was

21  inaccurate that the kosher meals were prepared by an outside vendor.  Am. Compl. at 22.  Plaintiff

22  received no response to this Form 22.

23       Due to the nutritionally inadequate meals, Plaintiff lost over 20 pounds between January

24  2013 and December 2013.  Am. Compl. at 19 and 22.

25       On February 5, 2014, Plaintiff submitted a Form 22 to Gomez and Hall stating that the re-

26  packaging of the kosher meals did not resolve the contamination issue or the nutritional

27  inadequacies.  Am. Compl. at 23.  Cook Gomez responded that PBSP repackages the meals

28  because the vendor-provided seal comes off.  Am. Compl. at 10.  Plaintiff unsuccessfully sought a

United States District Court
Northern District of California

4

1   supervisor level review of this response.

2       Plaintiff makes a general allegation that "[d]uring the 602 process,"[2] CRM Losacco

3   granted his request that meals be served in their original containers and packaging.  Am. Compl. at

4   24.  Plaintiff further alleges that, during this 602 process, Plaintiff was told that Food Manager

5   Reyes was aware of the needs of Jewish inmates and that Reyes met regularly with a Menu

6   Review Team to address inmate concerns regarding the meal portion size and nutritional balance.

7   Am. Compl. at 25.

8       **Allegations regarding housing transfer.**  On April 11, 2013, Plaintiff made a verbal

9   request to the Unit Classification Committee ("UCC") for a transfer to a prison that would provide

10  him Jewish scripture, a Jewish rabbi, and a proper kosher diet, which he alleged that PBSP did not

11  provide.  Am. Compl. at 12 and 28.  The UCC, composed of Correctional Counselor I Markel,

12  Correctional Counselor II Webster, and Facility Captain Walch, denied Plaintiff's request for a

13  transfer, finding that he was appropriately housed at PBSP.  Am. Compl. at 12.  Plaintiff appealed

14  this decision by submitting a Request for Supervisor Review and a prison grievance.  Am. Compl.

15  at 13 and 28.  The prison grievance, number PBSP-N-01074, was reviewed at the first level and

16  denied in its entirety by Correctional Captain Osborne and Correctional Administrator Bradbury.

17  Am. Compl. at 13 and 29.  Grievance number PBSP-N-01074 was reviewed by Warden Lewis,

18  and denied by Chief Deputy Warden Ducart.  Am. Compl. at 13 and 29.  Plaintiff never received a

19  response to his Request for Supervisor Review.  Am. Compl. at 28.

20      **Allegations regarding free exercise of religion.**  Plaintiff alleges that Defendants have

21  prevented him from exercising his First Amendment right to practice his religion by providing him

22  with meals that are not kosher because the meals are unclean, contain non-kosher items, or

23  otherwise violate kosher laws; and by failing to provide him with Jewish Scriptures.[3]  Plaintiff

24

25  [2] "Because the form for filing a grievance is numbered CDC Form 602, the grievance procedure is known within the prison system as the '602.'"  Kim Mueller, Inmates' Civil Rights Cases and the

26  Federal Courts: Insights Derived from A Field Research Project in the Eastern District of California, 28 Creighton L. Rev. 1255, 1272 (1995).

27  [3] In it June 16, 2015 Order of Service, the Court dismissed Plaintiff's claim that Defendants'

28  failure to provide him with a Jewish rabbi because there is no constitutional right to a clergyperson of an inmate's choice.  See Docket No. 67 at 6 (citing Ward v. Walsh, 1 F.3d 873, 880 (9th Cir.

United States District Court
Northern District of California

informed Gomez that he was being served meals that violated kosher laws.  Am. Compl. at 66.

Gomez responded that he would make the necessary changes to Plaintiff's meals.  For the two

days following Gomez's response, however, Plaintiff continued to receive meals that did not

comply with kosher laws.  Am. Compl. at 27.  Plaintiff also alleges that CRM Losacco has refused

to provide him with Jewish Scriptures.  Am. Compl. at 28.

On April 8, 2013, Plaintiff submitted a Form 22 to Correctional Counselor II Markel

regarding inter alia PBSP's failure to provide him with Jewish scriptures, and requesting a transfer

to a prison which could accommodate his religious needs.  Markel responded that these issues

would be addressed at the April 11, 2013 UCC meeting, which is discussed supra.

**Relief Sought**.  Plaintiff claims that the aforementioned constitutional violations caused

him physical injury, and emotional and psychological distress.  He seeks compensatory and

punitive damages.  Am. Compl. at 32, 34, and 36. Plaintiff seeks injunctive relief on all his claims,

including but not limited to being transferred away from PBSP so that he would not be subject to

retaliation for bringing these claims.  Plaintiff also seeks declaratory relief.

## II.     June 16, 2015 Order of Service

On June 16, 2015, the Court found that, liberally construed, the amended complaint

stated cognizable claims for a violation of Plaintiff's First Amendment right to the free exercise of

religion and for a violation of plaintiff's rights under RLUIPA.  The Court found that the amended

complaint adequately linked defendants Gomez, Halls, Plunkett, Reidel, Ireland, Young, Cooper,

Lemos, Sojka, Reyes, Losacco, Lewis, and Ducart to these claims based on their roles in denying

his requests for a religious diet and other religious accommodations, and adequately linked

Maurino to these claim based on her role in developing and administering new diet programs at

CDCR institutions.  Docket No. 67 at 5.  The Court noted that the potential liability of the

defendants who allegedly reviewed and rejected Plaintiff's inmate appeals was under the First

Amendment, RLUIPA, and the Eighth Amendment.  The Court noted that "[i]f a defendant only

denied an inmate appeal about a religious problem that already had occurred and was complete

1993) (prison officials have no duty to provide inmates who adhere to minority religion with
clergyman of their choice)).

United States District Court
Northern District of California

(e.g., an exclusion of the inmate from a religious ceremony on a past date), there would be no liability for a constitutional violation; however, where the problem is an ongoing religious need and the request is made in an inmate appeal to remedy the ongoing problem, liability can be based on the denial of an inmate appeal, just as it could be based on the denial of a verbal request from the inmate." Docket No. 67 at 5–6 (citing to Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006) (supervisor may be liable for deliberate indifference to a serious medical need, for instance, if he or she fails to respond to a prisoner's request for help)).  Docket No. 67 at 7.

The Court also found that the amended complaint stated a cognizable Eighth Amendment claim against defendants Gomez, Halls, Plunkett, Reidel, Ireland, Young, Cooper, Lemos, Sojka, Reyes, Losacco, Lewis, Ducart, and Maurino.  Docket No. 67 at 5 (citing Hebbe v. Pliler, 627 F.3d 338, 343 (9th Cir. 2010) (quoting Allen v. City and County of Honolulu, 39 F.3d 936, 940 (9th Cir. 1994) ("'[A]n inmate cannot be forced to sacrifice one constitutionally protected right solely because another is respected.'")).

The Court also found that that the amended complaint stated a cognizable claim that the refusal to transfer him violated his First Amendment religious freedom, RLUIPA, and Eighth Amendment rights and adequately linked defendants Markel, Webster, Walch, Osborne, Bradbury, and Ducart to this claim.  Docket No. 67 at 7.

## DISCUSSION

## I.      Requests for Judicial Notice

Defendants have requested that the Court take judicial notice of the following:

1.      Ruling Denying Petition for Writ of Habeas Corpus, signed by Judge Doehle in In re Rafael Salas (Case No. HCPB 14-5150, Dec. 29, 2014).

2.      Unit Classification Committee Chrono, dated April 17, 2014, authored by Defendants S. Walch, L. Webster, and M. Markel, regarding Plaintiff.

3.      Inmate Grievance No. 13-00102, authored by Plaintiff and cited in the Amended Complaint at ¶¶ 44, 83, and 85.

4.      First Level Response to Inmate Grievance No. 13-00102, dated Feb. 12, 2013 and cited in the Amended Complaint at ¶¶ 44, 83, and 85.

Docket No. 78.

Federal Rule of Evidence 201(b) provides that a "court may judicially notice a[n

adjudicative] fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a)-(b).  Although the Court "may take judicial notice of the existence of unrelated court documents . . . it will not take judicial notice of such documents for the truth of the matter asserted therein." In re Bare Escentuals, Inc. Sec. Lit., 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) (in considering defendant's motion to dismiss, the court took judicial notice of the existence of unrelated court documents, but declined to take judicial notice of truth of the matters set forth in these unrelated court documents); see also McMunigal v. Bloch, No. C 10–02765 SI, 2010 WL 5399219, *2 n.1 (N.D. Cal. Dec. 23, 2010) (granting judicial notice of documents filed in another lawsuit for purposes of noticing the existence of the lawsuit, claims made in the lawsuit, and that various documents were filed, but not for the truth of the matters asserted therein).  Accordingly, the Court GRANTS Defendants' request for judicial notice and takes judicial notice of each document.  The judicially noticed fact in each instance is limited to the existence of the document, not the truth of the matters asserted in the documents.

## II.    Motion to Dismiss

### A.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. See Parks Sch. of Bus. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." Cousins v. Lockyer, 568 F.3d 1063, 1067 (9th Cir. 2009).  Thus, "a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555.

In evaluating a Rule 12(b)(6) motion, the issue is "not whether a plaintiff will ultimately

United States District Court
Northern District of California

prevail, but whether the claimant is entitled to offer evidence to support the claims" advanced in his or her complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" Cousins, 568 F.3d at 1067 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662 (2009); see also Bell Atl. Corp., 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." Id.

In deciding whether to dismiss, a court may consider only the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters of which the court may take judicial notice.[4] See U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment.").

"[T]o ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements[,]" the pleadings of pro se litigants "are liberally construed, particularly where civil rights claims are involved." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). However, a court's "liberal interpretation of a civil rights complaint may not supply essential elements of [a] claim that were not initially pled." Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). Thus, a pro se

---

[4] Accordingly, the Court DENIES Plaintiff's request that the Court "take notice" of certain documents in support of his opposition to the motion to dismiss. Docket No. 88. Specifically, Plaintiff requests that the Court "take notice" of the following: 1) numerous Form 22s filed by other inmates requesting Jewish religious texts; (2) a May 3, 2000 PBSP Library Book List; (3) an inmate declaration regarding a statement made by the Jewish rabbi on February 14, 2016; (4) Plaintiff's request for a Christian Bible; and (5) Plaintiff's request for Passover meals. Docket No. 88 at 1–3. None of these documents were specifically referenced in Plaintiff's amended complaint. In his amended complaint, Plaintiff referred generally to requests for Jewish religious texts submitted by the B-Yard Jewish inmates in his amended complaint. See Am. Compl. at 28 ("plaintiff has had the entire Jewish community in B-yard to submit their own request for Jewish scriptures"). However, he did not specify when these requests were filed or by whom. The remainder of the documents are not referenced in the amended complaint. The Court notes that Plaintiff did not make a request for judicial notice pursuant to Fed. R. Evid. 203.

1    plaintiff's complaint which offers only "vague and conclusory allegations of official participation

2    in civil rights violations" does not state a claim "sufficient to withstand a motion to dismiss." Id.

3        **B.    Res Judicata**

4        Defendants argue that the principles of res judicata bar Plaintiff's housing transfer claims

5    because a state court has already addressed these claims.  Docket No. 77 at 13.  Plaintiff argues

6    that res judicata is inapplicable because the instant action and the state habeas action challenge

7    two different housing transfer denials; that the housing transfer denial challenged by the state

8    habeas action could not be the subject of this action because that denial took place after this action

9    was filed; and that this federal action seeks damages which are unavailable in the state habeas

10   proceedings.

11       The Federal Full Faith and Credit statute, 28 U.S.C. § 1738, requires federal courts to

12   "give to a state-court judgment the same preclusive effect as would be given that judgment under

13   the law of the State in which the judgment was rendered."  Migra v. Warren City Sch. Dist. Bd. of

14   Educ., 465 U.S. 75, 81 (1984).  In California, a final judgment in state court "'precludes further

15   proceedings if they are based on the same cause of action.'"  Brodheim v. Cry, 584 F.3d 1262,

16   1268 (9th Cir. 2009) (quoting Maldonado v. Harris, 370 F.3d 945, 951 (9th Cir. 2004)).  Under

17   California's "primary rights theory," a "cause of action is (1) a primary right possessed by the

18   plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by

19   the defendant which consists in a breach of such primary right and duty."  Brodheim, 584 F.3d at

20   1268 (citation omitted).  If this cause of action test is satisfied, then the same primary right is at

21   stake, even if in the later suit the plaintiff pleads different theories of recovery, seeks different

22   forms of relief, and/or adds new facts supporting recovery.  Id.; see also Gonzales v. California

23   Dep't of Corr., 739 F.3d 1226, 1232 (9th Cir. 2014) ("California's doctrine of claim preclusion

24   does not require identity of relief sought").  "However . . . a given set of facts may give rise to the

25   violation of more than one primary right, thus giving a plaintiff the potential of two separate

26   lawsuits against a single defendant."  Sawyer v. First City Fin. Corp., 177 Cal. Rptr. 398, 403

27   (Cal. Ct. App. 1981) (internal quotation marks omitted).

28       "[R]easoned denials of California habeas petitions" have claim-preclusive effect.

United States District Court
Northern District of California

1    Gonzales, 739 F.3d at 1231.  Such denials also have issue-preclusive effects.  "[B]ecause of the

2    nature of a state habeas proceeding, a decision actually rendered should preclude an identical issue

3    from being relitigated in a subsequent § 1983 action if the state habeas court afforded a full and

4    fair opportunity for the issue to be heard and determined under federal standards."  Silverton v.

5    Dep't. of the Treasury, 644 F.2d 1341, 1347 (9th Cir. 1981).

6         In Case No. HCPB 14-5150, Plaintiff argued that his rights pursuant to section 5068 of the

7    California Penal Code were violated when, on April 17, 2014, the UCC refused to transfer him to

8    a correctional facility closer to where Petitioner's children and extended family live.  Docket No.

9    78-1 (Ruling Denying Petition for Writ of Habeas Corpus, In re Rafael Salas, C No. HCPB 14-

10   5150, Dec. 29, 2014).  In the instant action, Plaintiff argues that his First Amendment right to free

11   exercise of religion, his rights under RLUIPA, and his Eighth Amendment right to be free of cruel

12   and unusual punishment were violated when, on April 11, 2013, the UCC refused to transfer him

13   to a correctional facility that could adequately meet his religious needs.  Am. Compl. at 12–13 and

14   28–29.  Defendants argue that in filing the instant federal action, Plaintiff is simply asserting a

15   different legal theory to challenge the housing transfer denial, which is barred by res judicata.

16   Defendants' argument fails for the following reasons.

17        First, as Plaintiff points out, Plaintiff is seeking relief for two separate injuries, arising out

18   of two separate sets of facts.[5]  Separate transactions give rise to separate causes of action, even if

19   both events were wrongful for the same reason.  See, e.g., Louis Stores, Inc. v. Department of

20   Alcoholic Beverage Control, 57 Cal.2d 749, 757 (1962) ("If res judicata is applicable here,

21   however it cannot operate as a direct bar to the maintenance of the second proceeding, within the

22   primary aspect of the doctrine . . . because the proceeding now before us presents a cause of action

23   different from the one determined in 1953, i.e., it is based on events occurring after March 12,

24   1953, rather than the events occurring before July 30, 1948, referred to in the earlier

25   _____

26   [5] Plaintiff cites other cases in support of his contention that his housing transfer claims are not
     barred by res judicata.  The Court does not address these cases because they are out-of-circuit

27   cases which are not binding on this court, Farrakhan v. Gregoire, 590 F.3d 989, 1000 (9th Cir.),
     overruled on other grounds by 623 F.3d 990 (9th Cir. 2010) (en banc) ("Out-of-circuit cases are
     not binding on this Court and therefore do not constitute 'controlling authority.") and they do not

28   apply California law, as required by 28 U.S.C. § 1738, Migra, 465 U.S. at 81.

United States District Court
Northern District of California

proceeding."); <u>Frommhagen v. Board of Supervisors</u>,197 Cal. App. 3d 1292, 1299–1300 (1987)

("Similarly, in this case the service area charges are calculated each year under the procedure

outlined in section 25210.77a. Thus, each year is the origin of a new charge fixing procedure, new

charge liability, and, we believe, a new cause of action. In the parlance of the 'primary right

theory,' those paying charges have a primary right to have the charges properly calculated and

imposed each year."). Each housing transfer denial therefore gave rise to a separate cause of

action. The cases cited by Defendants are inapplicable because they involve plaintiffs seeking

relief for the same set of facts but raising different legal theories. <u>See</u>, <u>e.g.</u>, <u>Gonzalez</u>, 739 F.3d

1226 (prisoner-plaintiff challenged his gang validation on due process grounds in a state habeas

proceeding and then challenged the same validation as retaliatory, violating his First Amendment

rights, and denying him his equal protection rights).

Second, the state proceeding concerned a different primary right than the primary rights at

issue in the instant federal proceeding. Defendants incorrectly identify the relief sought (housing

transfer) as the primary right. The term "cause of action" "relates not to the remedy involved or

the relief asked, but to the right or obligation which is sought to be enforced. If a different . . .

right or obligation is pleaded in the second action, the cause of action is different, even though the

relief sought is the same." <u>Ideal Hardware & Supply Co. v. Dep't of Employment</u>, 114 Cal. App.

2d 443, 448, 250 P.2d 353, 356 (Cal. Ct. App. 1952). In the state proceeding, Plaintiff sought to

vindicate a right allegedly created by state regulation, the right to be housed near his family. In

the instant federal proceeding, Plaintiff seeks to vindicate his First Amendment right to free

exercise of religion, his rights under RLUIPA, and his Eighth Amendment right to be free of cruel

and unusual punishment. Accordingly, the housing transfer-related cause of action in the state

proceeding is distinct from the housing transfer-related causes of action in the instant federal

proceeding, and res judicata does not apply.

Defendants' motion to dismiss Plaintiff's housing transfer claim as barred by res judicata is

DENIED.

**C.    Eleventh Amendment**

Defendants correctly argue that they are entitled to Eleventh Amendment immunity with

United States District Court
Northern District of California

United States District Court
Northern District of California

respect to Plaintiff's official-capacity claims for monetary relief.  The Eleventh Amendment bars federal lawsuits against a state by its own citizens, citizens of another state or citizens or subjects of any foreign state.  <u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 237–38 (1985).  This Eleventh Amendment immunity extends to suits against a state agency, <u>see</u>, <u>e.g.</u>, <u>Brown v. Cal. Dep't of Corrs.</u>, 554 F.3d 747, 752 (9th Cir. 2009) (California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity), and to state officials sued in their official capacities, <u>see</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 169–70 (1985).  The Eleventh Amendment also specifically prohibits litigants from bringing suits for money damages against state officials acting in their official capacity.  <u>Eaglesmith v. Ward</u>, 73 F.3d 857, 860–61 (9th Cir. 1995); <u>see also</u> <u>Kentucky</u>, 473 U.S. at 169–70 (citing <u>Dugan v. Rank</u>, 372 U.S. 609, 620 (1963)) (suit will be barred under the Eleventh Amendment if the judgment sought would expend itself on the public treasury or domain); <u>Confederated Tribes & Bands v. Locke</u>, 176 F.3d 467, 469 (9th Cir. 1999) (damages claim against governor in his official capacity barred by Eleventh Amendment).  The Court therefore GRANTS Defendants' motion to dismiss all official-capacity claims for damages.  Plaintiff's official-capacity claims for damages are DISMISSED with prejudice.[6]

### D.   RLUIPA claims

Defendants argue that all of Plaintiff's RLUIPA claims must be dismissed.  Defendants are correct that Plaintiff's official-capacity RLUIPA claims seeking damages must be dismissed with prejudice because they are barred by the Eleventh Amendment.  <u>Sossamon v. Texas</u>, 563 U.S. 277 (2011); <u>Holley v. Cal. Dep't of Corr.</u>, 599 F.3d 1108, 1114 (9th Cir. 2010) (Eleventh Amendment bars inmate's suit for official-capacity damages under RLUIPA); <u>see generally</u> <u>Kentucky</u>, 473 U.S. at 169–70.  Defendants are also correct that Plaintiff's individual-capacity RLUIPA claims must be dismissed with prejudice.  RLUIPA does not authorize suits against state actors, including

---

[6] The Eleventh Amendment does not bar Plaintiff's official-capacity claims for injunctive relief because a suit against a state official seeking prospective injunctive relief from unconstitutional state action is not a suit against the state, even if the state is the real party in interest.  <u>Kentucky</u>, 473 U.S. at 167 n.14; <u>Ex parte Young</u>, 209 U.S. 123, 159–60 (1908).  Nor does the Eleventh Amendment bar Plaintiff's official-capacity claims for declaratory relief.  <u>Native Village of Noatak</u>, 38 F.3d 1505, 1513–14 (9th Cir. 1994).

1   prison officials, acting in their individual capacity.  Wood v. Yordy, 753 F.3d 899, 904 (9th Cir.

2   2014) (agreeing with other circuits addressing this issue).

3         Plaintiff argues that the instant action is unique because it is the first time a plaintiff has

4   sought damages under RLUIPA for physical injury.  This distinction is irrelevant.  In finding that

5   the Eleventh Amendment prohibits suits for all money damages against state officials acting in

6   their official capacity, the Supreme Court focused on the nature of the relief sought (money

7   damages) rather than the effect of the constitutional violation, e.g. physical injury.  Sossamon, 563

8   U.S. at 285–86.  Even if this is the first time that a plaintiff has sought damages under RLUIPA

9   for physical injury, the Supreme Court and Ninth Circuit have clearly stated that monetary

10  damages are unavailable under RLUIPA.  Where the Supreme Court and the Ninth Circuit have

11  spoken clearly, this Court will follow their commands.

12        Defendants are incorrect that Plaintiff's RLUIPA claims must be dismissed in their

13  entirety.  Plaintiff has sought injunctive and declaratory relief against Defendants in their official

14  capacity for all his claims, including his RLUIPA claims.  Defendants argue that the only

15  injunctive relief sought by Plaintiff is a housing transfer, which is barred by res judicata.  As

16  discussed supra, Plaintiff's claims regarding a housing transfer are not barred by res judicata.

17  Also, the amended complaint clearly specifies the housing transfer as a possible, but not the sole,

18  injunctive relief.  See, e.g., Am. Compl. at 36 ("Plaintiff is entitled to injunctive relief but not

19  limited to an order requiring his transfer away from PBSP to another institution where his

20  religious needs could be met.") (emphasis added).

21        The Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss

22  Plaintiff's RLUIPA claims.  The Court dismisses with prejudice Plaintiff's official-capacity

23  RLUIPA claims for damages and all of Plaintiff's individual-capacity RLUIPA claims.  Plaintiff

24  may proceed on his remaining official-capacity RLUIPA claims for declaratory and injunctive

25  relief.

26        **E.      Failure to State a Claim**

27              **1)      Reyes**

28        Defendants argue that Plaintiff's allegations regarding Reyes are insufficient to state a

14

1    claim against him.  The amended complaint refers specifically to Reyes four times.  The first

2    reference identifies Reyes as a Correctional Food Manager, and alleges that Reyes directs Sojka in

3    planning, directing, and coordinating food service activities, and that Reyes was made aware of

4    the alleged constitutional violations through 602s and through Sojka.  Am. Compl. at 5.  The

5    second reference alleges that Plaintiff was informed by Chaplain Larry Mitchell that CRM

6    Losacco provided "results" of the Jewish kosher Diet Program to Reyes.  Am. Compl. at 24.  The

7    third reference alleges that Reyes is "very aware of the needs of Jewish inmates . . . [and] that a

8    standardized Menu Review Team meet on a regular basis and is made up of Food manager (i.e.

9    Defendant) who relay the concerns of inmates and provide input regarding portion size and

10   nutritional balance of inmate meals."  Am. Compl. at 25.  The fourth reference alleges that Reyes

11   violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment "in the

12   form of being issued unsanitary contaminated food . . ."  Am. Compl. at 31.  Defendants argue that

13   these allegations fail to state a claim for § 1983 liability.

14         A person deprives another of a constitutional right, within the meaning of §1983, if he does

15   an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is

16   legally required to do that causes the deprivation of the constitutional right.  Leer v. Murphy, 844

17   F.2d 628, 633 (9th Cir. 1988).  "A supervisor is only liable for constitutional violations of his

18   subordinates if the supervisor participated in or directed the violations, or knew of the violations

19   and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (no

20   respondeat superior liability under § 1983).  Plaintiff's amended complaint is devoid of specific

21   factual allegations that Reyes knew about the contaminated food.  For example, it is unclear what

22   kind of "results" are reported by Losacco to Reyes, and whether such a report took place during

23   the relevant time period.  Similarly, it is unclear how the Menu Review Team learns of inmates'

24   concerns and whether Plaintiff's concerns were known to the Menu Review Team.  The Court

25   finds that Plaintiff's allegations regarding Reyes' participation in the alleged Eighth Amendment

26   violation are conclusory, and therefore insufficient to withstand a motion to dismiss.  Ivey, 673

27   F.2d at 268.

28         The Court GRANTS Defendants' motion to dismiss Reyes from this action.  However, this

United States District Court
Northern District of California

15

1    dismissal is with leave to amend to correct the identified deficiency if Plaintiff can truthfully do

2    so.  See Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) ("a district court should grant leave

3    to amend even if no request to amend the pleading was made, unless it determines that the

4    pleading could not possibly be cured by the allegation of other facts") (citation and internal

5    quotation marks omitted).

6                      **2)      Bradbury, Osborne, Ducart, Lewis, Reidel, Cooper, Ireland, Young,**
                                 **Plunkett, Lemos, and Sojka**
7

8            Defendants argue that Plaintiff has not alleged sufficient facts to state a claim against

9    Reyes, Bradbury, Osborne, Ducart, Lewis, Reidel, Cooper, Ireland, Young, Plunkett, Lemos, and

10   Sojka because liability cannot be based upon reviewing a prison grievance, a Form 22, or serving

11   as a supervisor.  Defendants argue that recent Ninth Circuit case law has held that there is no

12   liability under § 1983 for reviewing a prison grievance, citing to Peralta v. Dillard, 744 F.3d 1076

13   (2014), and Shallowhorn v. Molina, 572 Fed. Appx. 545 (9th Cir. 2013), an unpublished decision.

14   Neither of these cases are applicable here.

15           Peralta's holding is narrower than Defendants argue, and Peralta is distinguishable from

16   the instant case.  In Peralta, the Ninth Circuit found that a prison medical officer without expertise

17   in a specific field who denies an inmate appeal for medical care after it was reviewed by two

18   qualified medical officials does not demonstrate a wanton infliction of unnecessary pain.  Peralta,

19   744 F.3d at 1086.  Here, however, no expertise was required to recognize that the food being

20   served Plaintiff (spoiled, incomplete, roach-infested) could violate Plaintiff's rights under the First

21   Amendment, Eighth Amendment, and RLUIPA.  In addition, Peralta recognized that a prison

22   administrator could be liable for deliberate indifference to a prisoner's medical needs if he

23   knowingly fails to respond to an inmate's requests for help.  Id. (citing Jett, 439 F.3d at 1098).

24           Shallowhorn is an unpublished decision and therefore not binding pursuant to Ninth

25   Circuit Rule 36-3 ("Unpublished dispositions and orders of this Court are not precedent, except

26   when relevant under the doctrine of law of the case or rules of claim preclusion or issue

27   preclusion.").

28           The Court finds that, liberally construed, Plaintiff's allegations that his prison grievances

16

1   and Form 22s were reviewed and responded to by Reyes, Bradbury, Osborne, Ducart, Lewis,

2   Reidel, Cooper, Ireland, Young, Plunkett, Lemos, and Sojka state cognizable claims for § 1983

3   liability.  Cf. Jett, 439 F.3d at 1098 (supervisor may be liable for deliberate indifferent to a serious

4   medical need if he or she fails to respond to a prisoner's requests for help).  The Court DENIES

5   Defendants' motion to dismiss Reyes, Bradbury, Osborne, Ducart, Lewis, Reidel, Cooper, Ireland,

6   Young, Plunkett, Lemos, and Sojka from this action.

7                    **3)    Supervisory Liability**

8          Defendants argue that Plaintiff has not alleged sufficient facts to state claims against

9   Gomez, Halls, Losacco, and Maurino in their capacity as supervisors.[7]

10         Plaintiff has alleged that Gomez and Halls received and responded to certain Form 22s

11  regarding contaminated food, see Am. Compl. at 11–12 and 14, and that Losacco reviewed and

12  partially granted a prison grievance regarding contaminated food, id, at 24.  These allegations are

13  sufficient to state a claim for § 1983 liability against Gomez, Halls, and Losacco.  Cf. Jett, 439

14  F.3d at 1098 (supervisor may be liable for deliberate indifferent to a serious medical need if he or

15  she fails to respond to a prisoner's requests for help).  The Court therefore DENIES Defendants'

16  motion to dismiss Gomez, Halls, and Losacco from this action.

17         Plaintiff has alleged that Maurino developed and administered the new generic Jewish

18  kosher diet that was implemented on October 1, 2012.  Am. Compl. at 10 and 17–18.  Plaintiff

19  alleges that the new kosher diet was half the portion size of the prior Jewish kosher diet and

20  nutritionally inadequate, thereby violating his Eighth Amendment right to be free from cruel and

21  unusual punishment.  Am. Compl. at 18, 23 and 33–34.  A prison official violates the Eighth

22  Amendment when two requirements are met: (1) the deprivation alleged must be, objectively,

23  sufficiently serious, Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501

24  _____

25  [7] Defendants have also argued that Plaintiff has not alleged sufficient facts to state claims against
    Lewis, Ducart, Reyes, Sojka, and Lemos in their capacity as supervisor.  The Court has already
26  dismissed Reyes from this action in section II.E.1 supra, so will not address the sufficiency of the
    supervisory liability allegations against Reyes.  The Court has already found that the amended
27  complaint sufficiently states a claim for § 1983 liability against Lewis, Ducart, Sojka, and Lemos
    based on their involvement in responding to Plaintiff's grievances and Form 22s in section II.E.2
28  supra, so will not address the sufficiency of the supervisory liability allegations against Lewis,
    Ducart, Sojka, and Lemos.

United States District Court
Northern District of California

1   U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind,

2   id. (citing Wilson, 501 U.S. at 297).  Plaintiff has adequately alleged that the contaminated and

3   nutritionally inadequate food was a serious deprivation in that he fell ill when eating the

4   contaminated food, Am. Compl. at 31, and he lost over twenty pounds while on this diet, id. at 23.

5   Liberally construing the complaint, as required by the Ninth Circuit, Balistreri, 901 F.2d at 699,

6   the Court reasonably infers for the purposes of the instant motion to dismiss that Maurino was

7   aware that the new kosher diet was half the portion size of the prior kosher diet.  Accordingly,

8   Plaintiff's factual allegations adequately state a claim that Maurino violated the Eighth

9   Amendment when she reduced the kosher diet portions by half.  The Court therefore DENIES

10   Defendants' motion to dismiss Maurino from this action.

11       **F.**    **Qualified Immunity**

12       The defense of qualified immunity protects "government officials . . . from liability for

13   civil damages insofar as their conduct does not violate clearly established statutory or

14   constitutional rights of which a reasonable person should have known."  Harlow v. Fitzgerald, 457

15   U.S. 800, 818 (1982).  A court considering a claim of qualified immunity makes a two-pronged

16   inquiry: (1) whether the plaintiff has alleged the deprivation of an actual constitutional right and

17   (2) whether such right was clearly established at the time of the defendant's alleged misconduct.

18   See Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Saucier v. Katz, 535 U.S. 194, 201

19   (2001)).  The court may exercise its discretion in deciding which prong to address first, in light of

20   the particular circumstances of each case.  Pearson, 555 U.S. at 236 (noting that while the Saucier

21   sequence is often appropriate and beneficial, it is no longer mandatory).  "[U]nder either prong,

22   courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment,"

23   and must, as in other cases, view the evidence in the light most favorable to the nonmovant.  See

24   Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014).

25       Defendants argue that Bradbury, Cooper, Ducart, Ireland, Osborne, Lewis, Lemos, Reidel,

26   Plunkett, Sojka and Young are entitled to qualified immunity because there is no established

27   constitutional right to a grievance procedure.  Defendants argue that Walch, Webster, and Markel

28   are entitled to qualified immunity because there is no established constitutional right for an inmate

United States District Court
Northern District of California

18

United States District Court
Northern District of California

1    to be housed at the prison of his choice.  Defendants also argue that Gomez, Halls, and Losacco

2    are entitled to qualified immunity because the manner in which they responded to Plaintiff's

3    grievances and Form 22s were not unlawful.  Finally, Defendants argue that Maurino's conduct

4    was not clearly unlawful.

5         Defendants inaccurately characterize Plaintiff's legal claims.  Plaintiff does not claim that

6    Defendants violated his right to a grievance procedure, to have his grievances decided in a certain

7    manner, or to be housed in the prison of his choice.  Rather, he claims that the distribution of

8    contaminated, nutritionally inadequate, and non-kosher food and the refusal to transfer him to a

9    prison that could meet his religious needs violated his First Amendment right to free exercise of

10   religion, his Eighth Amendment right to be free from cruel and unusual punishment, and his rights

11   under RLUIPA.  These rights are clearly established.  See Shakur v. Schriro, 514 F.3d 878, 833–

12   34 (9th Cir. 2008) ("Inmates retain the protections afforded by the First Amendment, including its

13   directive that no law shall prohibit the free exercise of religion.") (omitting internal quotation

14   mark and citation); Farmer, 511 U.S. at 832 (Eighth Amendment also imposes duties on prison

15   officials to provide all prisoners with the basic necessities of life such as food, clothing, shelter,

16   sanitation, medical care and personal safety); 42 U.S.C. § 2000cc-1(a) ("No government shall

17   impose a substantial burden on the religious exercise of a person residing in or confined to an

18   institution, as defined in section 1997 [which includes state prisons, state psychiatric hospitals, and

19   local jails], even if the burden results from a rule of general applicability, unless the government

20   demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling

21   governmental interest; and (2) is the least restrictive means of furthering that compelling

22   governmental interest.").  The Court DENIES Defendants' motion to dismiss Bradbury, Cooper,

23   Ducart, Ireland, Osborne, Lewis, Lemos, Reidel, Plunkett, Sojka, Young, Walch, Webster,

24   Markel, Gomez, Halls, Losacco, and Maurino on qualified immunity grounds.

25                              **CONCLUSION**

26        For the foregoing reasons, the Court orders as follows:

27        1.     Defendants' motion to dismiss (Docket No. 77) is GRANTED IN PART and

28   DENIED IN PART.

                                    19

2.      The Court DIMISSES WITH PREJUDICE all of Plaintiff's official-capacity claims for damages and all of Plaintiff's individual-capacity RLUIPA claims.

3.      Reyes is DISMISSED from this action with leave to amend.  If Plaintiff wishes to file an amended complaint to address the deficiencies identified above, he must do so within **twenty-eight (28) days** of the date of this order.  The amended complaint must include the caption and civil case number used in this order, Case No. C 14-1676 HSG (PR) and the words "SECOND AMENDED COMPLAINT" on the first page.  If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed.  Because an amended complaint completely replaces the previous complaints, Plaintiff must include in his amended complaint all the claims he wishes to present and all of the defendants he wishes to sue, including claims already found cognizable.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Plaintiff may not replead the claims that have been dismissed with prejudice. The Clerk shall include two copies of the court's complaint with a copy of this order to Plaintiff.  If Plaintiff chooses not to file an amended complaint in accordance with this order in the time provided, this action will proceed as specified below.

4.      If Plaintiff does not file a second amended complaint, this action will proceed on the following cognizable claims: (1) Gomez, Halls, Plunkett, Reidel, Ireland, Young, Cooper, Lemos, Sojka, Losacco, Lewis, Ducart, and Maurino denied Plaintiff's requests for a religious diet and other religious accommodations, in violation of Plaintiff's First Amendment right to the free exercise of religious and his rights under RLUIPA; (2) Gomez, Halls, Plunkett, Reidel, Ireland, Young, Cooper, Lemos, Sojka, Losacco, Lewis, Ducart, and Maurino failed to provide Plaintiff with food that he could eat consistent with his religious beliefs, in violation of the Eighth Amendment prohibition against cruel and unusual punishment; and (3) Markel, Webster, Walch, Osborne, Bradbury, and Ducart denied Plaintiff's request to transfer to a correctional facility that could meet his religious needs, in violation of Plaintiff's First Amendment right to the free exercise of religious, his rights under RLUIPA, and his Eighth Amendment right to be free from cruel and unusual punishment.  All the RLUIPA claims are only against Defendants in their official capacities.

20

United States District Court
Northern District of California

5.      If Plaintiff does not file a second amended complaint, the parties shall follow the briefing schedule set forth below.

        a.      No later than **ninety-one (91) days** from the date of this order, Defendants shall file a motion for summary judgment or other dispositive motion. The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from the events at issue.  A motion for summary judgment also must be accompanied by a Rand1 notice so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion.  Woods v. Carey, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in Rand must be served concurrently with motion for summary judgment). A motion to dismiss for failure to exhaust available administrative remedies must be accompanied by a similar notice.  Stratton v. Buck, 697 F.3d 1004, 1008 (9th Cir. 2012); Woods, 684 F.3d at 935 (notice requirement set out in Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003), must be served concurrently with motion to dismiss for failure to exhaust available administrative remedies).

        If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

        b.      Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **twenty-eight (28) days** after the date on which Defendants' motion is filed.

        c.      Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact—that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out

specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradicts the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.  <u>Rand</u>, 154 F.3d at 962–63.

Plaintiff also is advised that a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice.  You must "develop a record" and present it in your opposition in order to dispute any "factual record" presented by the defendants in their motion to dismiss.  <u>Wyatt</u>, 315 F.3d at 1120 n. 14.  You have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court.  Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents—documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. In considering a motion to dismiss for failure to exhaust, the court can decide disputed issues of fact with regard to this portion of the case. <u>Stratton</u>, 697 F.3d at 1008–09.

(The <u>Rand</u> and <u>Wyatt</u>/<u>Stratton</u> notices above do not excuse Defendants' obligation to serve said notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment.  <u>Woods</u>, 684 F.3d at 935.)

d.      Defendants shall file a reply brief no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

e.      The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

6.      Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose

United States District Court
Northern District of California

Plaintiff and any other necessary witnesses confined in prison.

7.      All communications by Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

8.      It is Plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3–11 a party proceeding pro se whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. See L.R. 3–11(a).

9.      Any motion for an extension of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

IT IS SO ORDERED.

Dated:  July 25, 2016

_____
JON S. TIGAR
United States District Judge